## No. 2334.
## Second Circuit Appeal

---

## BANK OF WINNFIELD v. RED BAYOU OIL COMPANY, INC. ET AL.

---

(June 30, Opinion and Decree).

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Bills and Notes— Par. 109, 110.**

Where a bank writes a letter to each of the endorsers of a note stating that "It has been suggested by some of the endorsers that each endorser liquidate his share of the note and close up the business of the company," it does not mean that the bank consented to a division of the debt, but each endorser is still liable in solido.

This is a suit by the Bank of Winnfield to collect a balance due on a note.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Appeal from Fifth Judicial District Court of Louisiana, Parish of Winn, Hon. F. E. Jones, Judge.

Pearce & Fuller, attorneys for plaintiff, appellant.

A. Leonard Allen; E. E. Kidd; Moss & Peters, attorneys for defendants, appellees.

ODOM, J. This is a suit by the Bank of Winnfield to collect a balance due on a note against John L. Calhoun, Liquidator of Red Bayou Oil Company, Inc., and against John L. Calhoun, S. J. Rockhold, L. A. Wilkinson, W. W. Allen, R. H. Fletcher, O. K. Allen W. A. Wright and A. W. Radescich.

John L. Calhoun, Liquidator, was cited but made no appearance, and default was entered against him as Liquidator.

John L. Calhoun, individually, and all of the other defendants, filed answers, all denying any indebtedness to the plaintiff for reasons which will be discussed later in this opinion.

There was judgment in the lower court rejecting plaintiff's demand against John L. Calhoun, individually, W. W. Allen, R. H. Fletcher, O. K. Allen, W. A. Wright and A. W. Radescich, and judgment in plaintiff's favor against John L. Calhoun, Liquidator, of the Red Bayou Oil Company, Inc., and L. A. Wilkinson, in solido for $717.50, on half of the balance due on said note, and against John L. Calhoun, Liquidator, and S. J. Rockhold, in solido, for the other half of the amount due on this note.

From this judgment the plaintiff has appealed.

L. A. Wilkinson also asked for and was granted an appeal, both devolutive and suspensive; but we do not find that he perfected his appeal by giving the bond required by law.

## OPINION

ODOM, J. On January 13, 1919, the Red Bayou Oil Company, Inc., represented by John L. Calhoun, its secretary and treasurer, negotiated a loan of $5000.00 from the Bank of Winnfield and executed its note in favor of the Bank for that amount due February 12, 1919, bearing interest at 8% from maturity.

It seems that the Bank was not willing to advance the money to the Red Bayou Oil Company, Inc., without security and in order to enable the company to borrow the money, John L. Calhoun, S. J. Rockhold, L. A. Wilkinson, W. W. Allen, R. H. Fletcher, O. K. Allen, W. A. Wright, and A. W. Radescich, all signed the note on its face with the company.

The note reads, in part:

"Feby. 12, 1919, after date, without grace, I, we, or either of us, for value received, promise to pay to the order of Bank of Winnfield, Winnfield, La., five thousand dollars."

In the printed portion of the note it is provided that all signers of the note are principals.

This note was not paid when due and another note was given as a renewal of the first one on October 14, 1921, and is made due January 1, 1922, and is for $5,590.00, including the amount originally borrowed and the accrued interest thereon.

This latter note is of precisely the same tenor as the first one and is signed by all the parties to the original note except S. J. Rockhold.

The plaintiff did not surrender the original note when the renewal note was given because, as we understand, one of the makers of it did not sign the renewal note; and the original note is attached to and made part of the petition along with the other note.

It seems that when the second note was given the Red Bayou Oil Company, Inc., was undergoing liquidation. At any rate, the second note is signed by "John L. Calhoun, Liquidator".

The note was not paid at maturity. The Bank became anxious about its payment and there was evidently some negotiations among the individuals who signed the note looking to its payment. At any rate, the bank wrote the following letter and mailed a copy to each of the parties to the note, to wit:

"Winnfield, La., 1-23-22.
"Mr. J. L. Calhoun.
"M. W. W. Allen.
"M. R. H. Fletcher.
"Mr. W. A. Wright.
"Mr. L. A. Wilkinson.
"Mr. A. W. Radescich.
"Mr. Rockhold.
Gentlemen:
The Red Bayou Oil Co., note has been in past due since 1-22-22, amounting to $5,590.00.

It has been suggested by some of the endorsers that each endorser liquidate his share of the note and close up the business of the company . This would amount to $698.75 for each of the endorsers. We think this is the proper course to follow, and we will thank each of you for your early attention to the matter. We have carried the paper a long time, and we welcome the suggestion to liquidate it.
"Yours Truly,
B. W. Bailey, Pres."

The parties named in the letter are the individual signers of the note.

Three months later six of these eight individuals went to the bank and collectively paid $4,155.00, and that amount is credited on the back of the note as of date "4—27—22".

Whether these six went to the bank all at the same time or during the same day is not clear, but the total amount paid by them is credited on the note as a lump sum under date of April 27, 1922.

However that may be, the facts are that each of these six individuals paid what was figured to be his pro rata or one eighth part of the amount due.

One of the others signed a note and gave a check for his pro rata of the debt, but the note was later returned to him.

After the·payment of the $4,155.00 on the note by the six individuals, there was left a balance of $1435.00 due thereon, which is the amount sued for.

The Bank brings this suit ·against the Red Bayou Oil Company, Inc., and against the individual signers of the note, including the six who paid, asking for judgment against them in solido.

The six individuals who made the payment on the note deny liability for the balance, on the ground, as they contend, that the Bank divided said debt into eight shares and that plaintiff accepted payment from each of those defendants in the sum of $717.40 in full settlement of the amount due by each of them and "that said payment was and is a full payment of the share of said obligation allotted to each of your defendants and was so accepted by the said Bank, and in consequence of said acceptance and division of the aforesaid acceptance your defendants have been released in law and fact from any further .obligation on the notes sued upon."

The defendant Rockhold, who signed the first note but not the second one, denies indebtedness on the ground that the first note was liquidated by the giving of the second note and that he was released from the debt.

L. A. Wilkinson defends on the ground that he executed a note and a check to cover his pro rata of the amount due which, he says, was accepted by the bank; and as an alternative plea he sets out that the bank had agreed to a division of the debt by accepting payment from some of the parties, and that the bank, for that reason, cannot hold him and the other signers as solidary obligors for the balance. due.

Defendant, Rockhold,· signed the first note but not the renewal note.

Plaintiff did not surrender or cancel the first note and there is no evidence that it agreed to release this defendant from his obligation thereon.

That note, so far at least as he is concerned, evidences a live obligation from which he cannot escape on the ground that his co-obligors gave a renewal obligation. He is still bound.

It is not disputed that the signers of the note sued on were bound in solido for the payment of the debt evidenced thereby, but they contend that the bank consented to a division of the debt with regard to the six who paid and that it received, separately, the part of the debt due by each of the individuals who paid, without taking a receipt and reserving therein the debt in solido or its right in general, and that, therefore, these defendants are relieved from any obligation to pay the balance of the debt.

The testimony· of Mr. Bailey, President of the bank, and of each of those who paid, is to the effect that at the time those amounts were paid there was no agreement, verbal or otherwise, that the signers of the note who paid should be released.

Mr. Bailey testified that:

"We stated to them that if each of the eight signers would liquidate a one-eighth part we would be satisfied."

But he says that he, as the representative of the bank, at no time agreed to release any of the parties until all of the debt was paid and that it was never intended that they should be released; that the parties themselves, he thinks, so understood it, because they requested no receipt or writing showing a release; and that O. K. Allen and R. H. Fletcher, two of those who paid, and possibly others of them, asked him to have the bank

proceed against Wilkinson and Rockhold, the two who did not pay, for the balance; indicating, as he understood, that they were interested in having the balance collected from those who failed to pay.

He says that the bank accepted the money.

"Predicated on the idea that those who paid were responsible for whatever unpaid balance the note might show."

While he states that there was no agreement to release any one, he admits that there were no reservations made in the letter which he wrote them nor were there any made at the time of the payment. He said that it was his understanding that each of the obligors was paying a proportionate part or one-eighth of the debt.

"I remember very distinctly that no statement was made that they would be discharged."

Doctor A. W. Radescich, one of those who paid, testified that he gave his check to the bank to pay his part of the Red Bayou Oil Company, Inc., debt. That he acted upon the suggestion contained in the letter; and he was asked if there was any express agreement between him and the bank officers that he should be released and he said:

"No, sir. Nothing except this letter."

And:

"They did not say they were either holding or releasing us."

R. H. Fletcher, another one of those who paid, says there was nothing said "pro or con" about releasing them; that he went by the letter; and he admits that he may have suggested that the bank proceed against Wilkinson and Rockhold for the balance.

O. K. Allen, another defendant, does not recollect that any one said they would be released, but says there was a general discussion and that it was generally understood by all present that they would be released; but he says there was no express agreement to that effect.

He further says that he made no request that the note be cancelled so far as he was concerned.

Mr. W. A. Wright said there was nothing stated about a release but:

"I just supposed that each fellow was going to pay his part, and I paid mine and left. My understanding was I was to pay my part."

Mr. John L. Calhoun testified that no reservations were made and that nothing was said about a release. Nothing further than the letter.

To the same effect is the testimony of Mr. W. W. Allen.

L. A. Wilkinson, who gave his note and check for his pro rata of the debt, says they told him that they would send him a receipt and a release but instead they returned his note.

It is clear, therefore, from the testimony, that the creditor did not consent to a division of the debt and that when it accepted the payment as above detailed it did not specifically reserve its right to proceed against those who paid for the balance.

But it is urged that the letter which the bank wrote to each of the debtors is evidence of its agreement to a division of the debt and is a formal demand on each for his part thereof; and, further, that, under article 2102 of the Civil Code the bank lost its rights against those who paid when it accepted their payment—

"without reserving in the receipt the debt in solido or its right in general" against them.

· Articles 2100, 2101, 2102 and 2103 of the Civil Code are found under the general subject of "Obligations", and under paragraph 4 of section 6 of chapter 4 thereof, which treats "Of the rules which govern obligations with respect to debtors in solido", article 2100 reads:

"The creditor, who consents to the division of the debt with regard to one of the co-debtors, still has an action in solido against the others, but under the deduction of the part of the debtor whom he has discharged from the debt in solido."

There can be no misunderstanding of this article of the Code.

If the bank in this case agreed to a division of the debt evidenced by the note and accepted from the individuals their part of the debt, it has lost its right to proceed against them for the balance, but still has its action in solido against those who have not paid, but under deduction of the part paid.

Defendants contend that the bank consented to a division of the debt as is evidenced by the letter.

· We do not think so.

The letter quoted above cannot, in our opinion, be construed as an agreement to divide the debt.

"It has been suggested by some of the endorsers that each endorser liquidate his share of the note and close up the business of the company."

That means nothing more than that some of the endorsers of the note had agreed among themselves that the proper way to close this indebtedness is for each endorser to pay his pro rata share thereof.

The bank communicated that suggestion to the debtors, not as its own suggestion but as the suggestion of "some of the endorsers".

"This would amount to $698.75 for each of the 8 endorsers."

There is nothing in that sentence except the bare statement of the amount that each would have to pay if the suggestion of "some of the endorsers" is adopted by all of them.

It is. not a division of the debt to merely state that one-eighth of it amounts to a certain sum.

"We think this is the proper course to follow, and we will thank each of you for your early attention to the matter. We have carried the paper a long time and we welcome the suggestion to liquidate it."

In saying that, the bank did nothing more, we think, than encourage and urge the endorsers, as they are called, to communicate the agreement which they had reached, among themselves, to liquidate the indebtedness.

Article 2103 of the Civil Code provides:

"The obligation contracted in solido toward the creditor is of right divided amongst the debtors, who, amongst themselves, are liable each only for his part and portion."

While amongst themselves these parties are each liable only for his share yet as to the creditor they are each bound for the whole of the debt.

These parties realized that and had evidently agreed amongst themselves that each should pay his share and communicate their intention to the bank.

The bank makes no demand on each individual for his part of the debt and does not put the proposition as coming from it but says:

"It has been suggested by some of the endorsers that each endorser liquidate his share of the note and close up the business of the company."

The letter, read and construed as a whole, states no more than a desire on the part of the creditor that these endorsers carry out the agreement amongst themselves to liquidate the debt.

There is nothing in the letter, as we construe it, which indicates that the bank was willing or intended to release any of the debtors from his in solido obligation to pay its debt.

But article 2101 of the Civil Code provides:

"The creditor, who receives separately, the part of one of the debtors, without reserving in the receipt the debt in solido or his right in general, renounces the debt in solido, only with regard to that debtor."

Now the defendants who paid say the bank received their part of the debt and did not reserve in the receipt the debt in solido against them.

But they overlook the fact that the debt, insofar as the creditor was concerned, was not divided into "parts".

The debtors, as amongst themselves, had evidently divided the debt into "parts", but the creditor did not agree to a division of the debt.

Therefore, when the creditor permitted each of these debtors to go into the bank and pay on the note one eighth of the amount due it, it did not thereby receive separately the part of one of the debtors.

But the creditor could not control the method adopted by these debtors for the liquidation of the debt.

It accepted the amount paid in by each of the debtors and credited on the note the total of the sums paid in a lump sum.

If these debtors, in paying to the bank these amounts, had had it understood that each was paying his part of the debt and had taken a receipt specifying that the amount which he paid was his part of the debt, that would have been a division of the debt and the receipt would have so indicated; in which event they would have been released.

The meaning of that part of the article of the Code is perfectly clear in view of the second part hereof which reads as follows:

"The creditor is not deemed to remit the debt in solido to the debtor when he receives from him a sum equal to the portion due by him, unless the receipt specify that it is for his part."

The creditor in this case received from each of the debtors a certain sum but gave no receipt specifying that it was for his part.

By the very terms of the Code the bank was not deemed "to remit the debt in solido" by receiving these amounts.

We find the rule stated in 8 Corpus Curis, page 581, under the head of "Bills and Notes" as follows:

"Each of the joint makers of a note, or joint acceptors or drawers of a bill is liable for the whole amount and the payment by him of a proportionate part of the same will not operate to discharge him as to the balance in the absence of an agreement to such effect supported by a consideration; and one of the several joint guarantors is not discharged as to the balance of the note by a receipt of his part thereon in full. A fortiori a part payment by a joint maker will not discharge the other makers. A part payment by one of several joint makers inures to the benefit of all."

Our Brother of the District Bench wrote a most able opinion both on the facts and the law of the case, and we agree with his conclusions as to both, except his interpretation of the letter written by the bank. He construes that to be a demand on each of the debtors in solido to pay his part of the debt, and a consent to a division thereof. We do not so construe it.

We think each of the signers of the note is bound in solido for the payment of the balance due on the note.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment

appealed from be avoided and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Bank of Winnfield, and against defendants, John L. Calhoun, Liquidator of the Red Bayou Oil Company, Inc., and John L. Calhoun, S. J. Rockhold, L. A. Wilkinson, W. W. Allen, R. H. Fletcher, O. K. Allen, W. A. Wright and A. W. Radescich in solido for the full sum of $1435.00, with 8% per annum interest thereon from January 1, 1922, until paid, and 10% on the amount of principal and interest, as attorney's fees, and all costs of this suit.

Reynolds, Judge, dissents.